[Civ. No. 26035. Fourth Dist., Div. One. Sept. 26, 1983.]

COUNTY OF SAN DIEGO, Plaintiff and Appellant, v.
BEVERLEE MYERS, as Director, etc., et al.,
Defendants and Respondents.

COUNSEL

Joseph Kase, Jr., Acting County Counsel, Lloyd M. Harmon, Jr., Chief Deputy County Counsel, and Phillip L. Kossy, Deputy County Counsel, for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Thomas E. Warriner, Assistant Attorney General, and Elisabeth C. Brandt, Deputy Attorney General, for Defendants and Respondents.

OPINION

WORK, J.—County of San Diego (County) appeals a judgment denying its petition for writ of mandate and request for declaratory and injunctive relief seeking reimbursement from the State of California (State) for costs incurred by County in administering and providing social services to "medically indigent" Medi-Cal recipients pursuant to statutory mandate. The County contends the trial court erred in finding the action time-barred. We conclude the trial court properly ruled and affirm the judgment.

*Factual and Procedural Background*

During fiscal years 1973-1974 and 1974-1975, the State reimbursed the County 100 percent of its cost in providing social services to "medically indigent" beneficiaries of the Medi-Cal program. This group included those persons not qualified for "categorical" aid but eligible for Medi-Cal because of indigency. The County was reimbursed by the State $1,633,305 for the cost of social services provided to the medically indigent during fiscal year 1973-1974, and $1,407,975 during fiscal year 1974-1975. After reviewing state and federal law, the State Department of Health decided these costs legally could not be billed to the Medi-Cal program. By letter dated August 28, 1975, the Department of Health informed all County welfare directors and County administrative officers that effective July 1, 1975, the cost of social services provided to medically indigent persons could no

longer be claimed under the Medi-Cal program. The County received this notice in September 1975, as the matter was considered at a conference committee meeting of the board of supervisors (Board) on September 24, 1975. In an "all-county letter," No. 75-210, dated October 3, 1975, the State furnished the County with claim instructions specifically prohibiting reimbursement of these costs as an administrative cost of the Medi-Cal program. The State mailed the County revised claim forms eliminating space for declaring the disputed costs.

In a memorandum dated October 15, 1975, County staff recommended to the Board that litigation be instituted to prevent the funding change. The Board considered the matter on November 4, 1975, and voted to freeze all hiring of social workers until the funding matter was settled.

During the first two quarters of the 1975-1976 fiscal year, the County spent $368,008 for social services to medically indigent persons during the first quarter (July 1, 1975, through Sept. 30, 1975) and $258,730 during the second quarter (Oct. 1, 1975, through Dec. 31, 1975). The County's revised first quarter claim dated November 5, 1975, was rejected December 29, 1975. The County's second quarter claim submitted January 13, 1976, was rejected April 6, 1976.

The present action was filed on December 29, 1978. The matter was tried on the merits; however, the trial court ruled the action was barred by the statute of limitations, concluding it was governed by the three-year statute within Code of Civil Procedure section 338, subdivision 1[1] which began to run against the County when the latter knew or should have known the State had firmly decided it would no longer honor these claims. The court found the County had actual knowledge no later than September 24, 1975, but, in any event, the County fully understood no later than November 5, 1975, the nature of the State's decision and its consequences. In addition, the court found, given the nature of the State's policy decision and the manner it was communicated to the County, there was no available administrative remedy, nor could the County reasonably have believed it was required to exhaust an administrative remedy before instituting litigation.

### Discussion

The County concedes the applicability of the three-year statute of limitations in section 338, subdivision 1,[2] but contends the trial court erred in

---

[1]All statutory references are to the Code of Civil Procedure.

[2]"Because plaintiffs' cause of action . . . seeks to enforce 'a liability created by statute,' it is subject to a three-year limitations period. (Code Civ. Proc., § 338, subd. 1; *Dillon* v. *Board of Pension Commrs.* (1941)18 Cal.2d 427, 429-430.)" (*Green* v. *Obledo* (1981) 29 Cal.3d 126, 141, fn. 10 [172 Cal.Rptr. 206, 624 P.2d 256].)

determining when the cause of action accrued and in failing to toll the statute while it pursued its administrative remedies. The County asserts the statute did not begin to run until the end of each quarter of the fiscal year in which the disputed services were rendered, because only then could a reimbursement claim be timely made. Further, the County claims the statute was tolled while it exhausted its administrative remedies of filing the claim for reimbursement and awaiting response by the State, and thus its action was timely. Finally, the County asserts alternatively that because the administration, appropriation and accounting for the program was on an annual (fiscal) basis, the statute did not commence to run until the end of the fiscal year.

■ Generally, a cause of action accrues and the statute of limitation begins to run when a suit may be maintained. (*Dillon* v. *Board of Pension Commrs.* (1941) 18 Cal.2d 427, 429-430 [116 P.2d 37, 136 A.L.R. 800]; *Gehman* v. *Superior Court* (1979) 96 Cal.App.3d 257, 265 [158 Cal.Rptr. 62], disapproved on other grounds in *People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744, 759, fn. 5 [163 Cal.Rptr. 585, 608 P.2d 673].) "Ordinarily this is when the wrongful act is done and the obligation or the liability arises, but it does not 'accrue until the party owning it is entitled to begin and prosecute an action thereon.'" (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 596 [83 Cal.Rptr. 418, 463 P.2d 770].) In other words, "[a] cause of action accrues 'upon the occurrence of the last element essential to the cause of action.'" (*Seelenfreund* v. *Terminix of Northern Cal., Inc.* (1978) 84 Cal.App.3d 133, 136 [148 Cal.Rptr. 307], quoting *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 187 [98 Cal.Rptr. 837, 491 P.2d 421].)

Absent case precedent in point, we find guidance by analogy in decisions construing governmental obligations to pay public (statutory) pensions and the determination of when the applicable statute of limitations runs. (See *Green* v. *Obledo, supra,* 29 Cal.3d 126, 141.) Within the pension cases, it is settled, "[t]he right to receive periodic payments under a pension is a continuing one [citation], and any time limitation upon the right to sue for each installment necessarily commences to run from the time when that installment actually falls due. Before plaintiff can claim these periodic payments, however, she must establish her right to a pension. If the Board of Pension Commissioners refuses to acknowledge this right upon application, she can properly bring an action of *mandamus* in the superior court to review the soundness of the board's decision, and to establish as a matter of law that she is entitled to the status of a pensioner. [Citations.] An action to determine the existence of the right thus necessarily precedes and is distinct from an action to recover installments which have fallen due after

the pension has been granted." (*Dillon* v. *Board of Pension Commrs., supra,* 18 Cal.2d 427, 430; *Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 684 [138 Cal.Rptr. 338]; *Carey* v. *Retirement Board* (1955) 131 Cal.App.2d 739, 746-747 [281 P.2d 25], disapproved on other grounds in *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 453 [326 P.2d 484].) ■ Consequently,. even though a pension is an obligation payable in periodic installments, the right to entitlement must be established within the applicable period of limitations or otherwise all pension rights are barred, including installments falling due in the future. (*Phillis* v. *City of Santa Barbara* (1968) 264 Cal.App.2d 781, 784 [70 Cal.Rptr. 573]; see *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 304 [61 Cal.Rptr. 661, 431 P.2d 245].)

■ Similarly, the underlying dispute here between the State and the County involves establishing statutory entitlement—whether the former's interpretation of the law as not requiring its reimbursement to the County for the latter's administrative costs incurred from providing social services for the medically indigent within the Medi-Cal program is proper. Accordingly, by analogy to the pension cases, the statute runs from the date notice entitlement is rejected, not upon failure to make a future periodic reimbursement where no obligation to do so exists. The trial court thus correctly ruled the matter was barred by the statute of limitations, because the statute began to run when the County received notice of the State's policy decision it was not statutorily required to reimburse the County the disputed administrative expenses, or on September 24, 1975, when a Board committee considered the matter, or at the latest on November 5, 1975, when the entire Board addressed the problem.[3]

■ "The exhaustion of administrative remedies will suspend the statute of limitations even though no statute makes it a condition of the right to sue. [Citation.] . . . 'When an injured person has several legal remedies and, reasonably and in good faith, pursues one designed to lessen the extent of the injury or damages, the statute of limitations does not run on the others while he is thus pursuing the one.' [Citations.]" (*Campbell* v. *Graham-Armstrong, supra,* 9 Cal.3d 482, 490, quoting *Myers* v. *County of Orange* (1970) 6 Cal.App.3d 626, 634 [86 Cal.Rptr. 198].) ■ However, here,

---

[3]Relying on *Campbell* v. *Graham-Armstrong* (1973) 9 Cal.3d 482, 490-491 [107 Cal.Rptr. 777, 509 P.2d 689], the County's alternative assertion the statute runs from the end of the fiscal year in light of the annual basis of the Medi-Cal program is without merit. Granted, an analogy between a contract and a statutory governmental obligation can be easily made. However, *Campbell* is distinguishable from the case at bench since it involved issues relating to factual entitlement of an already-determined statutory entitlement, where here the essence of the dispute is the statutory entitlement itself. Consequently, in *Campbell,* the language relied upon by the County is inapposite pertaining to the period of retroactive recovery of an established statutory right.

given the final nature of the State's policy decision evidenced by the revised claim forms and based upon its construction of the applicable statutory law, there was no administrative remedy available to the County and it could not have reasonably believed it was obligated to exhaust a "remedy" the State had expressly modified so as to eliminate its applicability to the expenses in dispute.

Judgment affirmed.

Brown (Gerald), P. J., and Hanscom, J.* concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 23, 1983.

---

*Assigned by the Chairperson of the Judicial Council.