[No. S082591. June 4, 2001.]

HOWARD JARVIS TAXPAYERS ASSOCIATION et al., Plaintiffs and Appellants, v.
CITY OF LA HABRA et al., Defendants and Respondents.

810

## COUNSEL

Trevor A. Grimm, Jonathan M. Coupal and Timothy A. Bittle for Plaintiffs and Appellants.

Harold W. Griffith III for California Taxpayer and California Voter as Amici Curiae on behalf of Plaintiffs and Appellants.

Law Office of Richard D. Jones, Jones & Mayer, Richard D. Jones, Kimberly Hall Barlow and Krista MacNevin Jee for Defendant and Respondent City of La Habra.

Laurence M. Watson, County Counsel, and Jim Persinger, Deputy County Counsel, for Defendant and Respondent County of Orange.

Markman, Arczynski, Hanson, Curley & Slough, James L. Markman and Boyd L. Hill for 110 California Cities and the California State Association of Counties as Amici Curiae on behalf of Defendants and Respondents.

Richards, Watson & Gershon, James L. Markman and Michael G. Colantuono for 82 California Cities and the California State Association of Counties as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**WERDEGAR, J.**—In an action against a city for allegedly imposing and collecting a general tax on its residents without the voter approval mandated by Proposition 62 (Gov. Code, §§ 53720-53730), when does the statute of limitations begin to run? Defendant, the City of La Habra (the City), contends the statute started to run on the date the City enacted its ordinance authorizing the tax. Plaintiffs, three taxpayer advocacy groups and three La Habra taxpayers, argue the statute began to run when this court, in *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220 [45 Cal.Rptr.2d 207, 902 P.2d 225] (*Guardino*), declared Proposition 62 to be constitutional. In the alternative, plaintiffs argue the limitations period starts to run anew each month when the tax is collected. The lower courts agreed with the City and held untimely plaintiffs' action to establish the tax's invalidity and prevent its continued collection, which action was filed more than three years after the ordinance's enactment.

We agree with plaintiffs' second contention; we conclude that if, as alleged, the tax is illegal, its continued imposition and collection is an ongoing violation, upon which the limitations period begins anew with each collection. We therefore find the action for declaratory judgment and writ of mandate timely; consequently, we reverse the judgment of the Court of Appeal, which affirmed the trial court's dismissal of the action.

## Background

In November 1986, the voters approved Proposition 62, a statewide initiative providing, inter alia, that local governments may not impose any general tax until that tax is submitted to the electorate and approved by a majority of voters. (Gov. Code, § 53723.) A few years after the passage of Proposition 62, an appellate court declared its voter approval requirements unconstitutional. (*City of Woodlake v. Logan* (1991) 230 Cal.App.3d 1058, 1064-1068 [282 Cal.Rptr. 27] [provisions requiring submission of new local taxes to voters unconstitutionally imposed referendums on tax measures].)

In December 1992, the City adopted La Habra Ordinance No. 1445 (the Ordinance), establishing a utility users tax to raise revenue for general governmental purposes. The Ordinance became effective immediately upon its enactment, though it was not operative until May 1, 1993. The City did not submit the Ordinance to the voters for approval.

In September 1995, we issued our opinion in *Guardino, supra,* 11 Cal.4th 220. Rejecting claims that the voter approval requirements of Proposition 62 established an unconstitutional referendum system for tax enactments (see Cal. Const., art. II, § 9, subd. (a)), we held invalid a tax imposed without the required voter approval. (*Guardino* at pp. 238-254, 261.)

On March 26, 1996, more than three years after the Ordinance was adopted, plaintiffs—Howard Jarvis Taxpayers Association, Against City Tax, Paul Gann's Citizens Committee, and three individuals described as "citizens, voters and taxpayers of the City of La Habra"—filed the instant action against the City and the Auditor Controller of the County of Orange (the County) for declaratory relief (Code Civ. Proc., § 1060), taxpayers' injunctive relief (Code Civ. Proc., § 526a), and ordinary mandamus (Code Civ. Proc., § 1085). The complaint sought a declaration that the City's utility tax was invalid under Government Code section 53723, an injunction against its enforcement, and a writ of mandate compelling the City to cease collecting the tax until approved by a majority of the voters. It also sought to compel the County to withhold from the City's share of property tax revenues the amounts collected under the utility tax. (See Gov. Code, § 53728.) Finally, plaintiffs prayed for any other relief deemed proper, "including, but not limited to, refunds of past taxes collected in violation of law."

The City demurred on the grounds the action was barred by the three-year statute of limitations applicable to a liability created by statute (Code Civ. Proc., § 338, subd. (a)), and the taxpayers' injunctive relief cause of action

failed to allege an illegal expenditure of public funds (Code Civ. Proc., § 526a). The trial court sustained the demurrer without leave to amend and entered judgment in favor of the City. Although it decried the City's conduct in not having held an election, the court concluded the limitations period commenced when the Ordinance was enacted in December 1992.

The Court of Appeal affirmed, agreeing with the City and the trial court that the three-year limitation period commenced with the Ordinance's enactment.[1] First, expressly disagreeing with the decision in *McBrearty v. City of Brawley* (1997) 59 Cal.App.4th 1441 [69 Cal.Rptr.2d 862], the appellate court rejected plaintiffs' argument that accrual of plaintiffs' causes of action was deferred until the filing of *Guardino, supra*, 11 Cal.4th 220, due to the existence, before that time, of appellate decisions holding Proposition 62 unconstitutional. Second, the lower court disagreed with plaintiffs' contention that their causes of action accrue continually as the tax is collected and paid. "The gravamen of [plaintiffs'] complaint is the legality of the adoption of an ordinance imposing a utility tax without complying with the voter approval requirements of Proposition 62. The legality of that act must be timely challenged and cannot be said to accrue continuously with each month's utility bill." The Court of Appeal affirmed the dismissal on demurrer.

We granted plaintiffs' petition for review.

## DISCUSSION

■ In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Here the issue is purely legal: The City argues the statute of limitations began to run on the date the Ordinance was adopted; plaintiffs argue for a later date of accrual or for continuous accrual.

Government Code section 53723 provides: "No local government . . . may impose any general tax unless and until such general tax is submitted to the electorate of the local government . . . and approved by a majority vote of the voters voting in an election on the issue." That this is a general tax, imposed for general fund purposes, is undisputed (Gov. Code, § 53721); nor

---

[1] The Court of Appeal also agreed that the taxpayers' injunctive relief statute, Code of Civil Procedure section 526a, was inapplicable because plaintiffs were not seeking to enjoin the illegal *expenditure* of taxpayer funds; rather, they were seeking to stop the collection of taxes. Plaintiffs did not petition for review on that issue, and we do not address it.

is there any dispute that the City failed to comply with the statutory mandate before it imposed its utility tax.

Also undisputed is that this action is one "upon a liability created by statute," to which a three-year limitation period applies. (Code Civ. Proc., § 338, subd. (a).) As no different time of commencement is stated, the limitations period began when plaintiffs' cause of action accrued. (Code Civ. Proc., § 312.) ■ "Generally, a cause of action accrues and the statute of limitation begins to run when a suit may be maintained. [Citations.] 'Ordinarily this is when the wrongful act is done and the obligation or the liability arises, but it does not "accrue until the party owning it is entitled to begin and prosecute an action thereon." ' [Citation.] In other words, '[a] cause of action accrues "upon the occurrence of the last element essential to the cause of action." ' [Citations.]" (*County of San Diego v. Myers* (1983) 147 Cal.App.3d 417, 421 [195 Cal.Rptr. 124].)

## I. *Delayed Accrual*

■ It would appear a cause of action to challenge the validity of the City's utility tax first arose when the Ordinance was adopted, that being the first act allegedly in violation of Government Code section 53723. Plaintiffs, however, contend that accrual of the cause of action was delayed until the filing of *Guardino, supra,* 11 Cal.4th 220, when "the sole justification for not submitting [the City's] utility tax to the voters for approval—the supposed unconstitutionality of Proposition 62—[was] removed." At that time, plaintiffs assert, "the City became obligated to hold an election."

Plaintiffs find support in *McBrearty v. City of Brawley, supra,* 59 Cal.App.4th 1441 (*McBrearty*), for their contention that they had no cause of action against the City until this court issued its opinion in *Guardino, supra,* 11 Cal.4th 220. In *McBrearty,* as here, the defendant city adopted a utility tax ordinance without seeking voter approval. At the time of adoption, the Court of Appeal in *City of Woodlake v. Logan, supra,* 230 Cal.App.3d 1058, had declared Proposition 62 unconstitutional, but we had not yet disapproved that decision in *Guardino.* After our decision in *Guardino* was filed, and more than three years after the ordinance imposing the tax was adopted, a citizen petitioned for a writ of mandate compelling the city to put the tax to a vote. (*McBrearty* at pp. 1444-1445.) The appellate court ruled the cause of action did not arise until *Guardino* was decided. It reasoned that, under the controlling case law prior to *Guardino,* the city "had no . . . duty" to submit the measure to a vote, and the plaintiff therefore had no valid basis for seeking mandamus relief until *Guardino* overruled *Woodlake.* (*McBrearty* at pp. 1446-1447.)

The rationale of *McBrearty* is inconsistent with the principle that a change in the substantive case law governing a cause of action does not revive a claim otherwise barred by the statute of limitations. (See *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1116 [245 Cal.Rptr. 658, 751 P.2d 923] (*Jolly*); see also *Monroe v. Trustees of the California State Colleges* (1971) 6 Cal.3d 399, 406 [99 Cal.Rptr. 129, 491 P.2d 1105] (*Monroe*) [civil decisions do not "supersede the operation of the statute of limitations so as to revive old claims which were not pursued because of a previously prevailing contrary rule of law"]; *id.* at p. 408, fn. 5 ["the mere existence of a contrary precedent has never been considered sufficient to toll the running of the statute of limitations"].)

*Jolly*, *supra*, 44 Cal.3d 1103, is closely on point. The plaintiff had delayed bringing suit for injuries resulting from her mother's use of DES while the plaintiff was *in utero* because she could not identify the specific manufacturer of the drug supplied to her mother. Appellate case law prevailing at the time the plaintiff discovered the facts creating her cause of action (*McCreery v. Eli Lilly & Co.* (1978) 87 Cal.App.3d 77, 84 [150 Cal.Rptr. 730]) held a plaintiff in such a case must identify the precise manufacturer of the drug. We disapproved *McCreery* in *Sindell v. Abbott Laboratories* (1980) 26 Cal.3d 588, 612-613 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 1061] (see *Jolly* at p. 1116), holding a plaintiff who was harmed by DES and who was unable to identify the particular manufacturer could state a cause of action by joining defendants that manufactured a substantial percentage of the market share of the drug. Jolly filed her suit less than one year after *Sindell*, but more than one year after her action would ordinarily be deemed to have accrued. She attempted to avoid the bar of the one-year statute of limitations by arguing that the issuance of the court's opinion in *Sindell* was what started the limitations period running. (*Jolly* at p. 1114.)

We rejected the claim of delayed accrual, observing that the principle that a change in the law does not revive stale claims, though sometimes working harsh results, "encourages people to bring suit to change a rule of law with which they disagree, fostering growth and preventing legal stagnation." (*Jolly*, *supra*, 44 Cal.3d at pp. 1116-1117.) A contrary rule, we further noted, "would allow virtually unlimited litigation every time precedent changed." (*Id.* at p. 1117.)

The *McBrearty* court acknowledged the principle articulated in *Monroe*, *supra*, 6 Cal.3d at pages 406-407, and *Jolly*, *supra*, 44 Cal.3d 1103, but declined to apply it because "strict application of the general rule in this case would have required McBrearty to bring a lawsuit challenging the validity of

the tax at a time when the legal landscape suggested her only chance of success would be upon review of the issue by the California Supreme Court. Short of such a herculean effort, the City could at no time have been compelled to conduct an election for the tax in question." (*McBrearty, supra,* 59 Cal.App.4th at p. 1447.)

We properly rejected the same reasoning in *Jolly,* where the plaintiff, as in *McBrearty* and the case at bench, would have faced an adverse Court of Appeal decision, one later overruled by our decision in *Sindell v. Abbott Laboratories, supra,* 26 Cal.3d 588. "[P]laintiff's legal situation was not as dismal as it initially appears. First, she was in no worse a position than Judith Sindell, who ultimately prevailed in changing the law. . . . Although . . . *McCreery* [*v. Eli Lilly & Co.*], *supra,* 87 Cal.App.3d 77, appeared to foreclose such a suit, that case was an intermediate appellate court decision. In this regard, the last word on the subject had not been spoken, and other Courts of Appeal were free to disregard that case. Therefore, plaintiff was not entirely forestalled, even as a practical matter, from bringing a timely suit." (*Jolly, supra,* 44 Cal.3d at pp. 1117-1118.)

Here too, plaintiffs may have been discouraged by an adverse appellate decision, but were in no manner precluded from bringing an action against the City at the time of the Ordinance's enactment. Not only were they "in no worse a position" (*Jolly, supra,* 44 Cal.3d at p. 1117) than the plaintiffs in *Guardino,* who ultimately succeeded in changing the law, but one of them, the Howard Jarvis Taxpayers Association, was itself a plaintiff in *Guardino.* (See *Guardino, supra,* 11 Cal.4th at pp. 220, 228.) Plaintiffs were free to challenge the tax when it was first imposed, and might, as in *Guardino,* have obtained a favorable result in the Court of Appeal despite the adverse *City of Woodlake v. Logan* decision (*supra,* 230 Cal.App.3d 1058). (See *Guardino* at p. 228.) Failing that, they could have sought review here. Obtaining review of a decision of the Court of Appeal on a recurring matter of statewide concern is simply not the "herculean" labor the *McBrearty* court supposed. (*McBrearty, supra,* 59 Cal.App.4th at p. 1447; see Cal. Rules of Court, rule 29 [review will be ordered "where it appears necessary to secure uniformity of decision or the settlement of important questions of law"].) "Therefore, plaintiff was not entirely forestalled, even as a practical matter, from bringing a timely suit." (*Jolly* at pp. 1117-1118.)[2]

In a variation of their delayed-accrual claim, plaintiffs contend that, in the absence of voter approval, the City has never enacted its utility tax ordinance

[2]*McBrearty, supra,* 59 Cal.App.4th 1441, is disapproved insofar as it held an action to invalidate a tax under Proposition 62 did not accrue until the filing of *Guardino, supra,* 11 Cal.4th 220.

at all, making it impossible for plaintiffs to challenge the enactment immediately. Plaintiffs rest this argument on two passages from the court's opinion in *Guardino*. In distinguishing Proposition 62's voter approval process from a referendum, we described the former process as follows: "As we have seen, the sections prescribing the voter approval requirements of the measure ([Gov. Code,] §§ 53722, 53723) declare that no local entity may 'impose' a general or special tax 'unless and until' the tax is 'submitted to . . . and approved by' the required proportion of the electorate. It is apparent that if a tax is not deemed 'imposed'—which in this context means enacted—'unless and until' it is 'approved' by the voters, the approval is a precondition to such enactment. Without that approval, the measure will not take effect—in other words, will not become law." (*Guardino, supra*, 11 Cal.4th at p. 240.) "[B]ecause the electorate votes on the measure before it is 'enacted,' a favorable vote does not lift the stay of an 'effective date' that the ordinance never had; rather, it is only after that vote has been held that the ordinance is enacted, acquires an effective date, and becomes law." (*Id.* at p. 241.)

Unlike plaintiffs, we do not read these passages as suggesting that a tax put into force without the required voter approval has never been enacted or imposed and therefore cannot be challenged as to its validity. No question regarding the timeliness or ripeness of such actions being before us in *Guardino*, we did not express any opinion as to when such actions might first be brought. Our description of the voter approval process was of the process *as it operates under the statutes*, not of the result when, as allegedly happened here, the statutory process was bypassed. That under Proposition 62 a local tax may not validly be imposed without voter approval does not imply that, when a city disregards the approval requirement in imposing a tax, the imposition has never happened and thus may not be challenged. Indeed, a remedial provision of Proposition 62 clearly implies to the contrary. (See Gov. Code, § 53728 ["If any local government or district imposes any tax without complying with the requirements of this Article, . . . the amount of property tax revenue allocated to the jurisdiction . . . shall be reduced by one dollar ($1.00) for each one dollar ($1.00) of revenue attributable to such tax for each year that the tax is collected. Nothing in this section shall impair the right of any citizen or taxpayer to maintain an action to invalidate any tax imposed in violation of this Article"].)

II. *Continuous Accrual*

Finding plaintiffs' claim of delayed accrual without merit, we next consider their claim of continuous accrual. Plaintiffs contend that even if the

Ordinance's original enactment was *an* event giving rise to a cause of action, it was not the only such event. The City's "continued collection of a tax now known to be invalid . . . and its simultaneous continued refusal to hold an election" are, they claim, ongoing violations of Proposition 62, continuously giving rise to a cause of action to invalidate the tax.

The City, in answer, contends that "[t]he 'injury' that [plaintiffs] are clearly addressing in their present action is the enactment of the ordinance without voter approval, not the subsequent payments in compliance with the already enacted ordinance." The City claims "[t]he right which [plaintiffs] are attempting to enforce is the right to vote on new taxes; the accrual of [plaintiffs'] cause of action with respect to that right occurred at the time the ordinance at issue was adopted . . . . The *consequence* of that tax, the collection of money from taxpayers each month, does not constitute a 'new' or 'further' injury which somehow tolls the running of the statute of limitations in this case."

Plaintiffs reply that they are seeking redress for *two* types of injury: the violation of their right to vote on new taxes, and the City's continued collection of the tax without valid legal authority. The City is under no compulsion to continue collecting the tax, they note, and "[e]very month the City chooses . . . to send out another round of bills and collect more money without voter approval, it commits a new injury."

Although plaintiffs have, throughout this action and appeal, emphasized the allegedly improper enactment of the Ordinance, we find well taken their contention that they have, as well, complained of, and sought redress for, the City's continued collection of the allegedly unauthorized tax. Thus, in their complaint they allege the City imposed the utility tax "[*b*]*eginning* in 1992," and that it is "*currently* imposed at a rate of 6%." The taxpayer plaintiffs allegedly "have paid one or more of the challenged taxes within one year before the commencement of this action." The City's refusal to submit the tax to a vote allegedly "evidences" the City's belief no vote is required and demonstrates that "[a]n actual controversy *exists*" between the City and plaintiffs. The taxpayer plaintiffs claim to have no adequate remedy at law for the harm "which *will be* caused by defendant City's *continued imposition* of the taxes at issue in this case" or for the harm "which *will be* caused by defendant City's *continued refusal* to seek voter approval for its utility tax." "By *continuing to impose* the general tax at issue in this case," plaintiffs allege, "defendant City *is failing* to perform the legal duties required of it by Proposition 62." (Italics added throughout.) In their prayer for relief, they seek not only a declaration of the tax's invalidity, but also a writ of mandate

"commanding defendant City to cease collecting its utility tax" or submit it to the voters for approval. Finally, as noted earlier, plaintiffs pray for other appropriate relief, including "refunds of past taxes collected in violation of law."

True, plaintiffs have refrained from pursuing their refund claim in this action. In the trial court, counsel for plaintiffs conceded that, while they had prayed for a refund, "we are not all that serious about it. We are more serious about the vote." In a brief filed in the Court of Appeal, plaintiffs noted that they had prayed for refunds, but in their opening brief in this court they state without qualification that "plaintiff taxpayers are *not* seeking a refund of the taxes they have already paid . . . ."

Plaintiffs have, however, consistently claimed the City's continued collection of its utility tax is illegal, and have consistently sought equitable remedies and writ relief to prevent further illegal collections. The question is whether, having abandoned their refund claim, they have timely sought such prospective relief—specifically, a declaration of the tax's invalidity and a writ ordering the City to cease collecting the tax or put it to a vote—based on the City's recent and continuing collection of the tax. The City, indeed, does not dispute that the action would be timely as to individual payments of the tax;[3] the disputed point is whether plaintiffs, having essentially abandoned any claim for refund, may nonetheless base the timeliness of their cause of action for declaratory relief and petition for writ of mandate, both challenging the validity of the Ordinance's enactment and continued collection, on the tax's ongoing collection.

We agree with plaintiffs that the lack of an outstanding refund claim in this case is a "distinction without a difference," for it does not affect the

---

[3]An action for refund of an illegally collected tax must generally be brought within a specified time after the tax is paid and an administrative claim denied. (See, e.g., Rev. & Tax. Code, §§ 5097, 5141 [property tax: claim must be made within four years after payment; action within six months after claim rejected]; *id.*, §§ 6902, 6933 [sales tax: claim within three years of end of payment period; action within 90 days of disallowance].) The parties have not cited, and our research has not disclosed, any such Revenue and Taxation Code provision governing local utility taxes. Because plaintiffs here do not seek refunds, we need not decide what claims procedures and limitations period would apply to such a claim. (See Ord., § 18 [providing a three-year period, running from the date of payment, for refunds or credits to the service supplier (which must then refund or credit the customer) for taxes "illegally collected or received"]; but see Pub. Util. Code, § 799 [providing, as to local utility taxes, that the service supplier is not liable to customers for refunds and may not be named a party in an action for a refund of the tax]; *Volkswagen Pacific, Inc. v. City of Los Angeles* (1972) 7 Cal.3d 48, 60-63 [101 Cal.Rptr. 869, 496 P.2d 1237] [holding limitations period in Gov. Code, § 945.6, applies to a refund claim for local tax that is not governed by the Rev. & Tax. Code or other statute].)

choice or application of the statute of limitations to plaintiffs' claims for mandamus and declaratory relief. Both mandamus and declaratory judgment are remedies available to enforce a variety of obligations; choice of the statute of limitations applicable to these remedies depends on the right or obligation sought to be enforced, and the statute's application generally follows its application to actions for damages or injunction on the same rights and obligations. (See 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, §§ 624-625, pp. 802-806.) ■■■ Thus, a declaratory judgment action or mandate petition to enforce a statutory liability must be brought within the same three-year period after accrual of the cause of action (Code Civ. Proc., § 338, subd. (a)) as an action for damages or injunction on the same liability. (*Abbott v. City of Los Angeles* (1958) 50 Cal.2d 438, 462-464 [326 P.2d 484]; *Dillon v. Board of Pension Commrs.* (1941) 18 Cal.2d 427, 429-430 [116 P.2d 37, 136 A.L.R. 800].) Plaintiffs' causes of action for a declaration of the currently collected tax's invalidity and for a writ of mandate to prevent future collection of the tax are no more barred by the statute of limitations than would be an action for refund of taxes paid.

■■■ That plaintiffs could have brought an action for declaratory judgment at the time of the Ordinance's enactment, before the City began actually collecting its tax, does not imply such an action was untimely because brought later, at a time when the City had collected the tax for some years and was continuing to do so. So long as an action for refund or injunction could have been brought during the period of continued collection, so could an action for declaratory relief. We explained the applicable principle in a case involving a city's continuing statutory obligation to pay pensions calculated on a certain basis: " '[I]f declaratory relief is sought . . . within the statutory period after the breach, the right to such relief is not barred by lapse of time.' [¶] Here, as we have seen, the statutory time limitation upon the right to sue for each pension instalment commences to run from the time when that instalment falls due. It follows that even though plaintiffs might have earlier brought suit for declaratory relief . . . their failure to do so does not operate to bar their right to declaratory relief with respect to future pension payments . . . ." (*Abbott v. City of Los Angeles, supra*, 50 Cal.2d at p. 463, quoting *Maguire v. Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 734 [146 P.2d 673, 151 A.L.R. 1062].)

In short, plaintiffs have alleged an ongoing violation of Proposition 62's commands, for which they seek relief in mandamus (Code Civ. Proc., § 1085, subd. (a)), and a presently existing actual controversy between themselves and the City over the validity of the utility tax, which they seek to resolve by declaratory judgment (Code Civ. Proc., § 1060); those causes

of action are not barred merely because similar claims could have been made at earlier times as to earlier violations, or because plaintiffs do not at this time also seek a refund of taxes paid.

The principal cases relied on by defendant and the Court of Appeal to defeat the theory of continuous accrual, none involving tax collection, are materially distinguishable.

In *Dillon v. Board of Pension Commrs., supra,* 18 Cal.2d at pages 430-431 (*Dillon*), we held a mandamus action to compel payment of a widow's pension was barred because it was not brought within three years of her husband's death, even though, as we acknowledged, the right to receive a pension is a continuing one. Our holding depended, however, on the premise that the plaintiff could not establish the right to a pension in an action to compel payment of a particular installment: "An action to determine the existence of the right thus necessarily precedes and is distinct from an action to recover instalments which have fallen due after the pension has been granted." (*Id.* at p. 430.)[4] We are aware of no comparable rule requiring an action to invalidate a tax be brought before, and separately from, an action for relief from particular payments of the tax. ▄ Indeed, in the absence of an independent bar on equitable or writ relief,[5] a person aggrieved by the required payment of a tax is not limited to seeking a refund, but may challenge the validity of the taxing agency's policy or continuing conduct by a claim for declaratory relief. (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 320 [87 Cal.Rptr.2d 423, 981 P.2d 52]; see, e.g., *Brown v. County of Los Angeles* (1999) 72 Cal.App.4th 665, 670 [85 Cal.Rptr.2d 414] ["[T]he availability to Brown of an action at law for a refund is not a bar to a declaratory judgment in her favor . . . . Without a declaratory judgment, the County could continue to tax her at the wrong rate"].) ▄ Unlike in *Dillon*, then, plaintiffs' failure to establish the tax's invalidity within three years of its enactment does not preclude them from complaining, on grounds of such invalidity, of the tax's continuing collection.

In *County of San Diego v. Myers, supra,* 147 Cal.App.3d at pages 421-422, the appellate court held a county's action against the State of California to

---

[4] Our subsequent decision in *Abbott v. City of Los Angeles, supra,* 50 Cal.2d 438, which involved a claim that pensions had to be calculated in a certain manner, distinguished *Dillon* as involving a determination "as to the plaintiff's *status* as a pensioner or right to a pension." (*Abbott* at p. 464.)

[5] Article XIII, section 32 of the California Constitution and section 6931 of the Revenue and Taxation Code bar certain injunctive and writ relief in tax actions *against the State of California* and its officers. Neither provision applies to this action against two local governments. Section 4807 of the Revenue and Taxation Code, which similarly bars actions to enjoin collection of *property* taxes, also does not apply to the utility tax at issue here.

compel reimbursement of costs for services to medically indigent county residents was untimely because not brought within three years of the state's notice that it would no longer reimburse such costs. Relying by analogy on *Dillon, supra,* 18 Cal.2d 427, and other public pension cases, the court held that because the underlying dispute involved the county's entitlement to reimbursement, "the statute runs from the date [of] notice [that] entitlement is rejected, not upon failure to make a future periodic reimbursement where no obligation to do so exists." (*Myers* at p. 422.) The *Myers* court apparently believed that, as in *Dillon,* the defendant's statutory obligation could only be established by an action separate from any specific claim for reimbursement, and that until such an action was successfully brought, "no obligation . . . exists" (*Myers,* at p. 422) to follow the statutory commands. Whether or not that premise was correct in *Myers,* it does not hold here. Proposition 62 prohibited the imposition of a general tax "unless and until such general tax is submitted to the electorate." (Gov. Code, § 53723.) That command is allegedly violated each time the City collects its utility tax through the service providers. As already noted, no statute or decision requires an aggrieved taxpayer to establish the tax's invalidity *before* suing for refund or to prevent its collection.

In *Ponderosa Homes, Inc. v. City of San Ramon* (1994) 23 Cal.App.4th 1761, 1769-1771 [29 Cal.Rptr.2d 26], the appellate court held that a city "imposed" a traffic mitigation fee on a developer when the development was conditionally approved rather than when the developer *paid* the fee. The decision is inapposite, both because of the differing statutory context (the statute of limitations there expressly ran from "imposition" [see *id.* at pp. 1768-1769]) and because plaintiffs here maintain that the City continues to impose the tax by requiring service providers to *collect* it, not that plaintiffs' *payment* of taxes constituted imposition by the City.

In its discussion of *Ponderosa Homes,* the City appears to contend that Proposition 62 can be violated *only* at the time a tax ordinance is first enacted because, in the City's view, all Proposition 62 prohibits is "imposition" of a tax without voter approval, and imposition is limited to the time of initial enactment. Both premises are faulty. Government Code section 53727, subdivision (b), which governs taxes imposed prior to the measure's passage, provides that no such tax "shall continue to be imposed" without a vote within two years of the measure's effective date, and that a taxing jurisdiction that fails to obtain a majority vote "shall cease to impose such tax on and after November 15, 1988." Clearly, in this provision, "imposition" is not limited to the time of initial enactment, and nothing in Proposition 62 suggests that it was used in a more restricted sense in Government

Code section 53723, the prohibitory provision at issue here. Government Code section 53728, moreover, provides a remedy against a city's continued collection of a tax that has not been approved by the voters, requiring the responsible county official to withhold property tax transfers in a dollar amount equal to the illegal collections. ■ Clearly the intent of Proposition 62's enactors was not merely to preclude enactment of a tax ordinance without voter approval, but to preclude continued imposition or collection of such a tax as well.

In *De Anza Properties X, Ltd. v. County of Santa Cruz* (9th Cir. 1991) 936 F.2d 1084, the court held an action under title 42 United States Code section 1983, challenging a mobilehome rent control ordinance, accrued when the ordinance was enacted and did not accrue anew "each time one of the appellants' tenants sells a mobile home to a new tenant and appellants are precluded from raising rent." (*De Anza Properties* at p. 1087.)[6] That result followed from the fact that the "action of the local government giving rise to a cause of action for a taking was the government's enactment of the ordinance itself," not the later sale of a mobilehome from one private party to another. (*De Anza Properties* at p. 1087; accord, *Fallini v. U.S.* (Fed. Cir. 1995) 56 F.3d 1378, 1382-1383 [cattle rancher's takings claim against government for enactment of the Wild Free-Roaming Horses and Burros Act, which allegedly resulted in wild horses drinking the rancher's water, accrued when the law was enacted rather than when the horses drank the water].) Here, in contrast, the City's allegedly illegal actions include not only the Ordinance's initial enactment, but also the City's continued collection, through the agency of the service providers, of an unapproved tax. (See *Fallini v. U.S.* at p. 1383 ["If the horses were agents or instrumentalities of the United States government, the analysis of what governmental action constituted the alleged taking might well be different"].)

■ Finally, an amicus curiae group of California cities and counties contends that plaintiffs' theory of continuous accrual, applied to tax measures, would unacceptably impair the security and reliability of municipal revenue sources and interfere with budgetary planning. Plaintiffs, in turn, acknowledge the public policy favoring security of municipal finance, but observe that the policy "is not a trump card that somehow requires the courts to countenance *ultra vires* or illegal tax practices." We agree. The local governments' suggestion, 14 years after the passage of Proposition 62 and

---

[6]As limited in *Levald, Inc. v. City of Palm Desert* (9th Cir. 1993) 998 F.2d 680, 688, the holding of *De Anza Properties* is that "in cases in which it would be futile to seek compensation in state court, a facial challenge to a statute as a taking without just compensation under [42 United States Code] section 1983 accrues upon the passage of the ordinance."

five years after *Guardino*'s resolution of the constitutional questions (*Guardino, supra,* 11 Cal.4th 220), that their budgetary planning processes will be disrupted if Proposition 62's requirements are enforced, is not well taken. Cities and counties must eventually obey the state laws governing their taxing authority and cannot continue indefinitely to collect unauthorized taxes.

Our decision in this case does not, in any event, subject municipalities to limitless claims for refund of illegal taxes. First, to state what should be apparent, our decision here does not resolve the substantive merits of plaintiffs' claims, much less the merits of similar potential claims against other municipalities; we resolve only the statute of limitations issue upon which review was sought. On that issue, moreover, we hold only that, where the three-year limitations period for actions on a liability created by statute (Code Civ. Proc., § 338, subd. (a)) applies, and no other statute or constitutional rule provides differently, the validity of a tax measure may be challenged within the statutory period after any collection of the tax, regardless of whether more than three years have passed since the tax measure was adopted. We are not concerned in this case with bond issues or other governmental actions that, by state law, are made subject to the accelerated validation procedures of Code of Civil Procedure sections 860-870.5. (See generally *Planning & Conservation League v. Department of Water Resources* (1998) 17 Cal.4th 264, 268-269 [70 Cal.Rptr.2d 635, 949 P.2d 488].) Moreover, our holding relates only to injuries occurring in the statutory three-year period before suit is brought and applies only to plaintiffs injured by tax collections within the three-year period. The legitimate public interest in stability of municipal finance is not imperiled.

## DISPOSITION

The judgment of the Court of Appeal is reversed.

George, C. J., Mosk, J., Kennard, J., Baxter, J., Chin, J., and Brown, J., concurred.

The petition of respondent City of La Habra for a rehearing was denied July 18, 2001, and the opinion was modified to read as printed above.