Filed 12/12/19

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GEORGE W. LUKE,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>SONOMA COUNTY et al.,<br><br>      Defendants and Respondents. | A155286<br><br>(Sonoma County<br>Super. Ct. No. SCV261187) |

Plaintiff George W. Luke, a Sonoma County resident and taxpayer, appeals from the trial court's orders sustaining the demurrers of Sonoma County (the County) and certain County officials, the Sonoma County Employees' Retirement Association, and the Sonoma County Law Enforcement Association (collectively, Respondents). Plaintiff argues the trial court erred in finding his claims challenging the payment of increased public employee pension benefits barred by the statute of limitations. We affirm.

BACKGROUND[1]

In 2002 or 2003, the County authorized increased pension benefits for County employees, pursuant to a settlement of employee lawsuits alleging past miscalculation of retirement benefits. In doing so, the County failed to comply with state laws requiring local legislative bodies to obtain an actuarial statement of the future annual costs of

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.

[1] "On appeal from the sustaining of a demurrer, we accept as true the well-pleaded facts in the operative complaint . . . ." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1189, fn. 1 (*Aryeh*).)

proposed pension increases, and to make the future annual costs public at a public meeting, before authorizing the pension increases. (See Gov. Code, §§ 7507, 23026, 31515.5, 31516.)[2] In 2017, Plaintiff filed the underlying petition for writ of mandate, alleging these violations and seeking a writ enjoining payment of the increased pension benefits.

The trial court sustained Respondents' demurrers to Plaintiff's original and first amended petitions, finding the claim barred by the statute of limitations. In sustaining the demurrers to the first amended petition, the trial court denied leave to amend. Judgment issued in favor of Respondents.

## DISCUSSION[3]

"This appeal follows the sustaining of a demurrer. The application of the statute of limitations on undisputed facts is a purely legal question [citation]; accordingly, we review the lower courts' rulings de novo. We must take the allegations of the operative complaint as true and consider whether the facts alleged establish [Plaintiff's] claim is barred as a matter of law." (*Aryeh, supra,* 55 Cal.4th at p. 1191.)

"An affirmative defense, the statute of limitations exists to promote the diligent assertion of claims, ensure defendants the opportunity to collect evidence while still fresh, and provide repose and protection from dilatory suits once excess time has passed. [Citations.] The duration of the limitations period marks the legislatively selected point at which, for a given claim, these considerations surmount the otherwise compelling interest in adjudicating on their merits valid claims. [Citations.] [¶] The limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues. [Citations.] Traditionally at common law, a 'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.' [Citation.] This is the 'last element' accrual rule: ordinarily, the statute

---

[2] All undesignated section references are to the Government Code.

[3] The Sonoma County Employees' Retirement Association and the Sonoma County Law Enforcement Association join in the arguments submitted on behalf of the County and its officials.

2

of limitations runs from 'the occurrence of the last element essential to the cause of action.' " (*Aryeh, supra,* 55 Cal.4th at p. 1191.)

"To align the actual application of the limitations defense more closely with the policy goals animating it, the courts and the Legislature have over time developed a handful of equitable exceptions to and modifications of the usual rules governing limitations periods. These doctrines may alter the rules governing either the initial accrual of a claim, the subsequent running of the limitations period, or both." (*Aryeh, supra,* 55 Cal.4th at p. 1192.) "[The defendant] bears the initial burden of proving [the plaintiff's] claims are barred by [the applicable] limitations period. [Citation.] Thereafter, the burden shifts to [the plaintiff] to demonstrate his claims survive based on one or more nonstatutory exceptions to the basic limitations period. [Citation.] That burden may be imposed even at the pleading stage." (*Id.* at p. 1197.)

All parties agree the applicable statute of limitations is set forth in Code of Civil Procedure section 338, subdivision (a), which provides a three-year limitations period for "[a]n action upon a liability created by statute, other than a penalty or forfeiture." Because Plaintiff's lawsuit was filed well over three years after the County approved the challenged pension increases, Respondents have met their burden to prove Plaintiff's claims are barred by this limitations period. The parties dispute whether Plaintiff has met his burden to demonstrate that his claim survives based on an exception to the limitations period.

I. *Continuous Accrual*

"[U]nder the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." (*Aryeh, supra,* 55 Cal.4th at p. 1192.) "The theory is a response to the inequities that would arise if the expiration of the limitations period following a first breach of duty or instance of misconduct were treated as sufficient to bar suit for any subsequent breach or misconduct; parties engaged in long-standing misfeasance would thereby obtain immunity in perpetuity from suit even for recent and ongoing misfeasance.

3

In addition, where misfeasance is ongoing, a defendant's claim to repose, the principal justification underlying the limitations defense, is vitiated." (*Id.* at p. 1198.) "Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation: 'When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period.' " (*Id.* at p. 1199.) "[T]he theory of continuous accrual supports recovery only for damages arising from those breaches falling within the limitations period." (*Ibid.*)

The obligation allegedly violated is the one imposed by former section 7507, as effective in 2002 and 2003: "The Legislature and local legislative bodies shall secure the services of an enrolled actuary to provide a statement of the actuarial impact upon future annual costs before authorizing increases in public retirement plan benefits. An 'enrolled actuary' means an actuary enrolled under subtitle C of Title III of the federal Employee Retirement Income Security Act of 1974 and 'future annual costs' shall include, but not be limited to, annual dollar increases or the total dollar increases involved when available. [¶] The future annual costs as determined by the actuary shall be made public at a public meeting at least two weeks prior to the adoption of any increases in public retirement plan benefits." (Former § 7507, added by Stats. 1977, ch. 941, § 1; amended by Stats. 1980, ch. 481, § 3, fn. omitted.)[4] As Respondents argue, the statute on its face does not impose a continuing or recurring obligation. Instead, the obligation is imposed before pension increases are authorized.

Plaintiff argues the County's failure to comply with former section 7507 renders the authorized pension increases void and therefore each pension payment made pursuant to this void authority is a new wrong triggering its own limitations period. Plaintiff relies on *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809 (*Howard Jarvis*), which involved "an action against a city for allegedly imposing and collecting a general tax on its residents without the voter approval mandated by Proposition 62 (Gov.

---

[4] The other statutes cited in Plaintiff's petition effectively restate these requirements (§§ 23026, 31515.5, 31516) or set forth a statement of legislative intent (§ 31515).

4

Code, §§ 53720–53730) . . . ." (*Howard Jarvis,* at p. 812.) "Government Code section 53723 provides: 'No local government . . . may impose any general tax unless and until such general tax is submitted to the electorate of the local government . . . and approved by a majority vote of the voters voting in an election on the issue.' " (*Howard Jarvis,* at p. 814.) As here, it was "undisputed . . . that this action is one 'upon a liability created by statute,' to which a three-year limitation period applies. (Code Civ. Proc., § 338, subd. (a).)" (*Id.* at p. 815.) The city argued the cause of action accrued when the tax ordinance was enacted without the requisite electorate vote and, because that enactment took place more than three years before the plaintiffs' action, the claim was time-barred. (*Id.* at p. 819.) In response, the plaintiffs argued "they are seeking redress for *two* types of injury: the violation of their right to vote on new taxes, and the City's continued collection of the tax without valid legal authority." (*Ibid.*) As to the latter, the plaintiffs alleged: " 'By *continuing to impose* the general tax at issue in this case,' . . . 'defendant City *is failing* to perform the legal duties required of it by Proposition 62.' " (*Ibid.*)

The Supreme Court agreed with the plaintiffs and held each collection of the tax triggered a new limitations period, pursuant to the continuous accrual theory. (*Howard Jarvis, supra,* 25 Cal.4th at p. 812.) In its analysis, the court relied on the statutory language enacted by Proposition 62 to conclude that the statute imposed an ongoing obligation. "Proposition 62 prohibited the imposition of a general tax 'unless and until such general tax is submitted to the electorate.' (Gov. Code, § 53723.) That command is allegedly violated each time the City collects its utility tax through the service providers." (*Howard Jarvis,* at p. 823.) The court expressly rejected the city's contention that Proposition 62's prohibition of the "imposition" of a tax without voter approval is limited to the time of enactment: "Government Code section 53727, subdivision (b), which governs taxes imposed prior to the measure's passage, provides that no such tax 'shall continue to be imposed' without a vote within two years of the measure's effective date, and that a taxing jurisdiction that fails to obtain a majority vote 'shall cease to impose such tax on and after November 15, 1988.' Clearly, in this provision, 'imposition' is not limited to the time of initial enactment, and nothing in Proposition 62 suggests that it was

5

used in a more restricted sense in Government Code section 53723, the prohibitory provision at issue here. Government Code section 53728, moreover, provides a remedy against a city's continued collection of a tax that has not been approved by the voters, requiring the responsible county official to withhold property tax transfers in a dollar amount equal to the illegal collections. Clearly the intent of Proposition 62's enactors was not merely to preclude enactment of a tax ordinance without voter approval, but to preclude continued imposition or collection of such a tax as well." (*Howard Jarvis,* at pp. 823–824.)

*Howard Jarvis* also noted that a tax refund action would have been timely as to the collection of any tax within the relevant limitations period for such an action. (*Howard Jarvis, supra,* 25 Cal.4th at p. 820 & fn. 3.) In a tax refund action, the plaintiff "is not limited to seeking a refund, but may challenge the validity of the taxing agency's policy or continuing conduct by a claim for declaratory relief." (*Id.* at p. 822.) The court reasoned, "Plaintiffs' causes of action for a declaration of the currently collected tax's invalidity and for a writ of mandate to prevent future collection of the tax are no more barred by the statute of limitations than would be an action for refund of taxes paid." (*Id.* at p. 821.)

We find *Howard Jarvis* distinguishable. In *Howard Jarvis,* the allegedly violated statute imposed an obligation at the time of a tax ordinance's enactment, but it also imposed a separate and ongoing obligation not to collect a tax enacted without voter approval. The court discerned the legislative intent to impose this ongoing obligation from the statutory language—in particular, the language in section 53727 providing that no tax imposed prior to Proposition 62's enactment " 'shall continue to be imposed' " without voter approval—construing section 53723's prohibition on the "impos[ition]" of a tax without voter approval to mean both the tax's initial enactment and its subsequent collection. (*Howard Jarvis, supra,* 25 Cal.4th at pp. 823–824; see also *Aryeh, supra,* 55 Cal.4th at p. 1200 ["To determine whether the continuous accrual doctrine applies here, we look . . . to the nature of the obligation allegedly breached."].) In contrast, the plain language of former section 7507 imposes only a one-time obligation: to obtain and make

6

public a statement of the future costs of proposed pension increases "before authorizing" them.

Plaintiff does not appear to argue that former section 7507 itself imposes a continuing obligation, but instead suggests *Howard Jarvis* stands for the proposition that, if an authority is void for failing to comply with a state law, a new limitations period to challenge the original failure is triggered every time money is collected or disbursed pursuant to that authority. Plaintiff construes the case too broadly. As discussed above, significant portions of the court's analysis rely on statutory language imposing a continuing obligation, not present here. We acknowledge that the opinion includes broader language suggesting the limitations period for a challenge to the validity of a tax measure based on a violation of *any* statute can be brought within three years after any collection of the tax. (*Howard Jarvis, supra,* 25 Cal.4th at p. 825 ["Cities and counties must eventually obey the state laws governing their taxing authority and cannot continue indefinitely to collect unauthorized taxes."]; *ibid.* ["[W]here the three-year limitations period for actions on a liability created by statute (Code Civ. Proc., § 338, subd. (a)) applies, and no other statute or constitutional rule provides differently, the validity of a tax measure may be challenged within the statutory period after any collection of the tax, regardless of whether more than three years have passed since the tax measure was adopted."].) But the actual analysis hinges on the nature of the obligation imposed by Proposition 62 itself. (See *In re Ricardo P.* (2019) 7 Cal.5th 1113, 1126 ["It is true that our opinion in [a prior case] contains some expansive language . . . . But our reasoning reflected the specific circumstances presented by the [facts of the case]."].) Moreover, even this broader language is limited to challenges to tax measures. The court's reasoning relied in part on factors unique to such measures, to wit, the availability of a refund action within a certain limitations period after the collection of a tax, and the ability to challenge the validity of the underlying tax measure in such an action. (*Howard Jarvis,* at pp. 820–822.) Plaintiff cites no comparable statute authorizing actions to challenge pension payments (or other county expenditures) and setting forth separate limitations periods for such actions.

The pension cases relied on by Plaintiff do not alter this analysis. The cases discussed by Plaintiff finding certain pension benefits invalid do not involve statute of limitations defenses and are therefore inapposite. (E.g., *San Diego City Firefighters, Local 145 v. Board of Administration, etc.* (2012) 206 Cal.App.4th 594; *Medina v. Board of Retirement* (2003) 112 Cal.App.4th 864.) Cases involving actions brought by pensioners rely on the proposition that " '[t]he right to receive periodic payments under a pension is a continuing one [citation], and any time limitation upon the right to sue for each instalment necessarily commences to run from the time when that instalment actually falls due.' " (*Abbott v. City of Los Angeles* (1958) 50 Cal.2d 438, 462; see also *Dryden v. Board of Pension Commrs.* (1936) 6 Cal.2d 575, 580–581.) That a pensioner has a continuing right to a pension does not mean that Section 7507 imposes a continuing obligation on the County.

In *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340 (*Baxter*), the California State Teachers' Retirement System (CalSTRS) discovered a years-long error in the monthly benefit calculation of certain retired teachers resulting in overpayments. (*Id.* at p. 347.) The teachers argued the applicable statute of limitations barred CalSTRS from bringing an action to recoup past overpayments and reduce future benefits. (*Ibid.*) The Court of Appeal held that, although CalSTRS' action was untimely, the continuous accrual doctrine applied. (*Id.* at p. 382.) The court relied on the continuing nature of the underlying obligation: "The right of each of the Teachers to receive monthly payments, and the obligation of CalSTRS to disburse them, are continuing ones that accrue when such payments become due." (*Id.* at p. 380; accord, *Blaser v. State Teachers' Retirement System* (2019) 37 Cal.App.5th 349, 367–368.) Contrary to Plaintiff's suggestion, the court's reasoning does not apply equally here. The continuing obligation of CalSTRS was to pay correctly calculated benefits—an obligation that recurred with every pension payment made. In contrast, the County's obligation at issue here was to procure and make public an actuarial statement before authorizing pension increases. Although Plaintiff argues the alleged violation of this obligation

8

rendered the pension increases void, the underlying obligation itself does not recur each time pension benefits are paid.[5]

In sum, former section 7507 imposes a duty on government entities to secure and make public an actuarial statement before approving pension increases. This duty is imposed at the time of approval and is not "a continuing one, susceptible to recurring breaches . . . ." (*Aryeh, supra,* 55 Cal.4th at p. 1200; see also *Howard Jarvis*, *supra*, 25 Cal.4th at pp. 823–824.) Unlike the statutory language at issue in *Howard Jarvis,* there is no basis to construe former section 7507 as imposing an additional and separate duty to not pay increased pension benefits pursuant to a pension increase authorized without compliance with its requirements regarding actuarial statements. To find such a requirement outside of former section 7507—by finding every allegedly void government action subject to ongoing challenge pursuant to the continuous accrual theory—would ignore the direction that, "[t]o determine whether the continuous accrual doctrine applies here, we look . . . to the nature of the obligation allegedly breached." (*Aryeh,* at p. 1200.) Accordingly, we find the continuous accrual doctrine does not trigger a new limitations period every time retirement benefits are paid pursuant to the increased pension benefits approved in 2002 and 2003.

II. *Delayed Discovery/Estoppel*

Plaintiff alternatively argues that his action is timely under the delayed discovery and estoppel doctrines. "[T]he discovery rule, where applicable, 'postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action.' " (*Aryeh, supra,* 55 Cal.4th at p. 1192.) "A plaintiff relying on the discovery

---

[5] Plaintiff's reliance on a constitutional provision prohibiting gifts of public funds (Cal. Const., art. XVI, § 6) and on a statute barring county payments on a void contract (§ 23006), is unavailing. Plaintiff contends that because these provisions impose ongoing obligations, it was unnecessary for the Legislature to impose an ongoing obligation in former section 7507. We decline to construe these provisions as effectively extending the continuous accrual doctrine to any alleged violation of a one-time statutory obligation that results in an expenditure of public funds. To do so would contravene the direction in *Howard Jarvis* and *Aryeh* that the continuous accrual doctrine looks to the underlying obligation allegedly violated—here, the obligation imposed by former section 7507.

9

rule must plead ' "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." ' [Citation.] Plaintiffs have an obligation to plead facts demonstrating reasonable diligence." (*WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 157.) "A party may be equitably estopped to assert the statute of limitations when his or her conduct induced another not to file a lawsuit within the applicable limitations period." (*Walker v. City of San Clemente* (2015) 239 Cal.App.4th 1350, 1370.)

All of the statutes allegedly violated required the County to provide specified notice at a public meeting of the board of supervisors. (Former section 7507 ["[L]ocal legislative bodies shall secure the services of an enrolled actuary to provide a statement of the actuarial impact upon future annual costs before authorizing increases in public retirement plan benefits. . . . [¶] The future annual costs as determined by the actuary *shall be made public at a public meeting* at least two weeks prior to the adoption of any increases in public retirement plan benefits." (italics added)]; see also §§ 23026 ["[T]he board of supervisors *shall make public, at a regularly scheduled meeting of the board*, all salary and benefit increases that affect either or both represented employees and nonrepresented employees. . . . Notice shall occur prior to the adoption of the salary or benefit increase, and shall include an explanation of the financial impact that the proposed benefit change or salary increase will have on the funding status of the county employees' retirement system." (italics added)], 31515.5 [same], 31516 ["The board of supervisors, in compliance with Section 7507, shall secure the services of an enrolled actuary to provide a statement of the actuarial impact upon future annual costs before authorizing increases in benefits. . . . [¶] The future annual costs as determined by the actuary *shall be made public at a public meeting* at least two weeks prior to the adoption of any increases in benefits." (italics added)].) Any violation would therefore be apparent from the public records of the County Board of Supervisors' meetings from 2002 and 2003. (See *International Longshoremen's and Warehousemen's Union v. Los Angeles Export Terminal, Inc.* (1999) 69 Cal.App.4th 287, 293 ["The Brown Act (§ 54950 et seq.), adopted in 1953, is intended to ensure the public's right to attend the meetings of

10

public agencies. [Citation.] To achieve this aim, the Act requires, inter alia, that an agenda be posted at least 72 hours before a regular meeting and forbids action on any item not on that agenda."].)

Plaintiff fails to allege (or argue) facts demonstrating why, under such circumstances, he was unable to discover the alleged violation within the limitations period. He has thus failed to meet his burden under the discovery rule. Moreover, "a discovery rule is not appropriate, where as here, a public agency's violation of a statute is a matter of public record and the violation is being asserted by a plaintiff which has no direct beneficial interest in the outcome of the litigation." (*Hogar Dulce Hogar v. Community Development Commission* (2003) 110 Cal.App.4th 1288, 1297.)

Plaintiff argues the public records "were superseded by the subsequent misrepresentations of Respondents," but the only cited misrepresentations were made in response to a 2012 grand jury report on the issue. This conduct took place well outside of the limitations period and therefore does not estop Respondents from invoking the statute of limitations. (*Walker v. City of San Clemente, supra,* 239 Cal.App.4th at p. 1370 [defendant's conduct "several years after the limitations period already had expired" was insufficient to warrant estoppel].)

Accordingly, we conclude that neither delayed discovery nor estoppel applies to toll the statute of limitations.[6]

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs.

---

[6] Because of our conclusion, we need not resolve several issues raised by the parties: whether the 2012 grand jury report was sufficient to put Plaintiff on inquiry notice of the alleged violation; whether any County officials were fiduciaries and/or had a conflict of interest with respect to the County's response to the grand jury report; whether Plaintiff failed to preserve certain claims; and whether the dismissal in favor of the Sonoma County Law Enforcement Association can be affirmed on alternative grounds. In addition, because our resolution of the issue relies solely on undisputed facts, we need not address the parties' dispute about judicial notice or Plaintiff's contention that the trial court relied on its own personal knowledge in resolving the issue.

11

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

BURNS, J.

(A155286)

Superior Court of Sonoma County, No. SCV261187, Hon. Rene Chouteau, Judge.

Robinson & Robinson, Jeffrey A. Robinson and Charles R. Patterson for Plaintiff and Appellant.

Colantuono, Highsmith & Whatley, Michael G. Colantuono, Jon R. di Cristina and Conor W. Harkins for Defendants and Respondents County of Sonoma, Sonoma County Board of Supervisors, Erick Roeser, Christina Cramer, Bruce Goldstein, and Sheryl Bratton.

Nossaman, Ashley K. Dunning and Jennifer L. Meeker for Defendant and Respondent Sonoma County Employees' Retirement Association and Julie Wyne.

Mastagni Holstedt, David P. Mastagni and Kenneth E. Bacon for Defendant and Respondent Sonoma County Law Enforcement Association.