Filed 12/13/23  Walters v. Warner CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ASHLEY WALTERS, | B322186 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 21STCV18680) |
| BRIAN WARNER et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Reversed and remanded with instructions.

Hadsell Stormer Renick & Dai, Dan Stormer, Tanya Sukhija-Cohen; Valli Kane & Vagnini and James Vagnini for Plaintiff and Appellant.

Gordon Rees Scully Mansukhani, Don Willenburg, Debra Ellwood Meppen and Gene F. Williams for Defendants and Respondents.

_____

Ashley Walters appeals from the order of dismissal entered after the trial court sustained without leave to amend the demurrer filed by defendants Brian Warner and Marilyn Manson Records, Inc. (Manson Records; collectively, Manson defendants) to Walters's second amended complaint. Walters asserted causes of action for sexual assault, sexual harassment, sex discrimination, and related claims based on allegations that Warner, a successful recording artist and the chief executive officer of Manson Records, subjected her to sexual, physical, and psychological abuse while she was employed by Manson Records as Warner's personal assistant in 2010 and 2011. In sustaining the demurrer, the trial court found each of Walters's causes of action was barred by the statute of limitations.

On appeal, Walters contends she alleged sufficient facts to support application of the delayed discovery rule, which postponed accrual of her claims until 2020, when she joined a support group and was able to recover suppressed memories of Warner's abuse. Walters also contends the Manson defendants are equitably estopped from asserting the statute of limitations because they coerced her into silence. Walters's allegations of delayed discovery were sufficient to withstand demurrer, and we reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.   *The Second Amended Complaint*

Walters filed this action on May 18, 2021. After the trial court sustained the Manson defendants' demurrer to the first

2

amended complaint with leave to amend, Walters filed the operative second amended complaint (complaint). The complaint alleged eight causes of action based on the same underlying factual allegations: (1) sex discrimination in violation of the Unruh Civil Rights Act (Civ. Code, §§ 51, 51.5, & 52); (2) sexual harassment (Civ. Code, §§ 51.9 & 52); (3) sexual assault (Code Civ. Proc. § 340.16);[1] (4) interference with Walters's exercise of her civil rights in violation of the Tom Bane Civil Rights Act (Civ. Code, § 52.1); (5) sexual battery (Civ. Code, § 1708.5); (6) intentional infliction of emotional distress; (7) battery; and (8) assault.

### 1. *Walters's pre-employment encounters with Warner (March through August 2010)*

As alleged, Warner is a successful recording artist who has achieved considerable fame with his notorious stage persona "Marilyn Manson," which is an allusion to film star Marilyn

---

[1] Code of Civil Procedure section 340.16, subdivision (a), establishes a 10-year statute of limitations for "any civil action for recovery of damages suffered as a result of sexual assault"; sexual assault is defined in subdivision (b)(1) as "any of the crimes described in Section 243.4, 261, 264.1, 286, 287, or 289, or former Sections 262 and 288a, of the Penal Code, assault with the intent to commit any of those crimes, or an attempt to commit any of those crimes." Walters's third cause of action, although styled as a claim for violation of section 340.16, alleges "Warner committed a sexual assault of [Walters] as more fully described in Section 243.4, 261, 264.1, 286, 287, 289, or former Section 288a, of the California Penal Code, and/or sexual assault with the intent to commit any of those crimes, and/or an attempt to commit any of those crimes." Further undesignated statutory references are to the Code of Civil Procedure.

Monroe and cult leader and serial killer Charles Manson. The complaint alleges that over several decades, Warner has been involved in music, production, film, and television, and he holds power and influence in the entertainment industry. Manson Records, founded by Warner in 1999, employs staff to facilitate Warner's personal and professional endeavors.

In March 2010 Warner contacted Walters, an aspiring photographer, through her social media to compliment her on her photography. In subsequent messages, he invited her to his home studio in West Hollywood to discuss opportunities for collaboration. Walters came to his home on May 10, and once they were alone, Warner asked Walters if he could photograph her. He then requested Walters remove her shirt; she hesitantly agreed. When he finished taking photographs, he pushed her on the bed, pinned down her arms, and tried to kiss her. Walters turned her head and moved away from him. Warner then bit her ear and placed her hand in his underwear. Walters again moved away and left the home.

After the May 10 encounter, Walters felt "confusion and fear," but she felt she had a creative connection with Warner and wanted to collaborate with him. A short time later, Walters modeled for another photo shoot for Warner in which she was topless. Warner's communications were professional, and he did not make any sexual advances, which induced her to trust him.

Warner subsequently invited Walters to perform in a video shoot as an "'audition'" to be his director of photography. The scene required Walters to get into bed with an actor and kiss him, but Walters soon realized the actor was touching his penis, and Warner instructed Walters to "'help'" the actor. When Walters got up to leave, the actor threw her against a wall and

4

shoved his tongue in her mouth. Walters later disclosed to Warner that she was a survivor of a prior sexual assault.

In August 2010 Warner asked Walters to be his personal assistant, telling her he would double her current salary, she would travel with him around the world, and he would introduce her to other directors and artists. Walters "unconsciously ignored the red flags," and relying on Warner's promises, she accepted the position with Manson Records. Warner and Manson Records required Walters to sign a confidentiality agreement regarding any private or confidential information she might acquire during their working relationship.

2. *Walters's employment at Manson Records (August 2010 through July 2011)*

(a) *Allegations of physical and psychological abuse*

As alleged, Warner subjected those around him, including Walters and other Manson Records employees, to physical and psychological abuse. He would routinely "push, whip, spit, charge at, kick and forcibly touch" those with whom he quarreled, often while brandishing weapons such as whips, hatchets, axes, and baseball bats. He frequently destroyed furniture, electronics, and fixtures in his home during fits of rage, and he punched holes in the walls and ripped doors off their hinges.

Warner talked constantly about his ability to stalk, kill, and ruin the lives of those who disobeyed him. Walters observed Warner orchestrate elaborate plans to embarrass or blackmail those he perceived to be disobedient, for example, by hacking into their computers to find damaging information or by recording embarrassing conversations. To control Walters, Warner took and maintained photographs and videos of her posing nude,

5

wearing Nazi memorabilia, or ingesting drugs, and he recorded her phone conversations, all with the implicit threat of publicizing them. Walters was "petrified" Warner would release a photograph that would be damaging to her. Warner routinely encouraged Walters to "'please'" his friends, and he warned her that male artists and celebrities would blacklist her if she did not please them. Warner boasted to Walters that he had gotten away with raping women, and made comments and jokes about rape despite knowing Walters had experienced a previous sexual assault.

(b)     *Allegations of suppressed memories of abuse*

The complaint also alleged Walters suppressed memories of numerous instances of abuse and harassment she suffered during her employment at Manson Records. Walters only recalled these incidents in the fall of 2020 or later, after she joined a support group and started therapy.

Walters recovered memories that Warner commonly "offered up" Walters sexually to friends and associates in the entertainment industry. At an awards show in September 2010, Warner pushed Walters onto the lap of an actor, saying the actor could "'have her.'" The actor then kissed Walters and held her on his lap. On another occasion at Warner's home, the same actor demanded Walters urinate in front of him, after which he denied her toilet paper, licked her vagina, and then kissed her on the mouth. Warner also "'offered'" Walters to a director, who cornered her in Warner's home and shoved his hand up her skirt while covering her mouth. Walters was routinely required to drive the director home, and the director would expose himself to her, request oral sex, and tell Walters he masturbated to

6

thoughts of her.  Warner also forced Walters to flirt with a musician; the musician bit her nipple with Warner's encouragement while Warner took photographs.  On another occasion Warner sent an image of Walters's worn underwear to colleagues and bandmates.

Walters also recovered memories that Warner physically abused her on multiple occasions, including whipping her and throwing her against a wall during a drug-induced rage.  Warner forced her to stay awake for 48 hours straight, one time requiring her to stand on a chair for 12 hours, and he fed her cocaine to keep her awake.  There were further instances when Warner subjected her to his abuse of other women.  For example, he showed her a video in which he stripped and whipped a young female fan until the fan screamed and cried.  The video portrayed Warner forcing the fan to drink urine, pointing a gun at her, and placing the gun inside her underwear.  During an overseas trip with Walters, Warner sent Walters a text message from his hotel room bragging about having just taken a young girl's virginity.  Warner told Walters that he wanted to kill the women he was involved with, and he showed her a video in which he referred to men who "'rape women but don't get away with it like I do.'"  In May 2011 he sent her a photograph of a former girlfriend's scarred back with the subject line "'Do you see what happens?!'"

3. *Walters's separation from Manson Records and subsequent threats (July 2011 through January 2022)*

In June 2011 Warner and his then-girlfriend Esme Bianco ended their relationship, and Bianco sent a message to Walters telling her to leave Warner's house because he was dangerous. Walters later got in a car accident while driving with Bianco in

7

Warner's car (and Walters was arrested for driving under the influence). Warner then terminated Walters's employment.

Warner rehired Walters one week later, telling her he considered her family and would change his behavior. Walters "was terrified about the repercussions she would face if she refused to return," and she needed the money. But within two weeks of her return, Warner was regularly berating her, and he accused her of trying to sabotage his career. In October 2011 Warner again terminated Walters's employment. Following her termination, Warner told Walters he planned to "'ruin her'"; he hacked into her social media account and changed her profile to a pornographic image; and he threatened to take legal action against her.

In 2015, in an effort to sabotage Walters's touring career, Warner told other artists and musicians that Walters had been denied entry into Canada because of her conviction for driving under the influence. In 2019, when women began to come forward with stories of abuse by Warner, he sent Walters a text message stating, "'Just curious if you are still a friend? After all the car and whatnot I got past. I'm a great friend. Not the opposite so much. Hope you are good.'" Walters, who continued to work in the entertainment industry, perceived this as a threat to stay quiet. In February 2021 Walters learned that Warner threatened to go to the homes of women who made public claims against him.

4. *Walters's support group, therapy, and suppressed memories (October 2020)*

In October 2020 Walters met with a group of women who, as alleged, had also been victimized by Warner. These and other

8

women who came forward publicly shared detailed accounts of sexual assault, rape, and physical and psychological abuse that "resonated deeply" with Walters.  Hearing their experiences "began to unlock new memories [Walters] repressed long ago as a result of her psychological trauma by being manipulated and threatened by Warner during and after her employment . . . ."  In November 2020 Walters began to see a licensed clinical social worker regarding the memories that had begun to resurface, and in December 2020 Walters was diagnosed with complex posttraumatic stress disorder, major depressive disorder, and generalized anxiety disorder.

As alleged, "the culture of manipulation, abuse, violence, praise, coercion, power and influence as celebrity implemented by Warner," combined with Walters's vulnerability as a victim of a prior sexual assault, caused her to "unknowingly and almost immediately repress[] at least some of the abuse she was subjected to by Warner."  Even after she left her employment at Manson Records, Walters "continued to remain disconnected from the memories of abuse she suffered and could not exercise any diligence in uncovering them as they were blocked from her memory.  She unconsciously avoided any steps that would enable her to uncover her memories and determine any legal claims she may have had regarding the treatment and abuse she suffered."

The complaint asserted Walters's claims were therefore "timely and actionable under the discovery rule because the abuse and trauma [Walters] endured triggered a psychological response whereby she suppressed certain memories, and she did not remember many of them" until late 2020 when she joined the support group and entered therapy.  At that time she "immediately exercised reasonable diligence to pursue her

claims" by reporting the abuse to the police in February 2021 and filing the lawsuit in May.

The complaint asserted in the alternative that the Manson defendants were barred by equitable estoppel from asserting the statute of limitations. Their "violence, threats, intimidation, coercion and other unconscionable conduct deterred [Walters] from pursuing her legal claims as to the unlawful conduct she could recall for years following the termination of her employment," and the deterrence "did not diminish until the public exposure of [the Manson defendants'] behavior," criminal investigations into Warner's conduct, and the support Walters gained from other survivors "altered the threat level and helped [Walters] feel safe enough to come forward." Although Walters "repressed many of the actual events that would cause her to take steps to assert her claims or investigate the nature of her claims," the "environment of fear and coercion" created by the Manson defendants "furthered the suppression of memories of abuse and also created an innate sense of fear of physical abuse, stalking, legal action or blackmail which further served to silence [Walters.]"

B.    *Defendants' Demurrer and the Trial Court's Order*

On April 12, 2022 the Manson defendants filed a demurrer to all eight causes of action in the complaint on the ground that Walters's claims were barred by the two-year statute of limitations under section 335.1. The Manson defendants argued the alleged misconduct occurred between May 2010 and October 2011 (when Walters's employment was finally terminated), and thus, her claims accrued no later than late 2011, when the last injury occurred. Moreover, the allegations of

10

delayed discovery were inadequate to toll accrual of the claims because Walters alleged she first recalled the abuse when she learned in 2020 that Warner abused other women, but she admitted in her complaint she was aware of Warner's abusive behavior towards women during and shortly after her employment. The demurrer also argued equitable estoppel did not apply because Walters did not allege any overt threats by Warner to discourage Walters from filing suit, only vague threats Warner made about ruining or killing *other* people, and the alleged threats and coercion ended after her termination in 2011.

In her opposition, Walters argued the complaint adequately alleged grounds to estop the Manson defendants from asserting the statute of limitations based on Warner's alleged frequent physical violence against Walters and others, his surveillance and collection of compromising material about them, and his threat to ruin perceived enemies. These threats and their coercive impact did not abate until shortly before Walters filed the lawsuit. As to delayed discovery, Walters argued the complaint alleged with specificity the acts of abuse and harassment that Walters suppressed until 2020 and the mechanisms by which her recollection of these acts was suppressed and later recovered.

In their reply, the Manson defendants countered, "[Walters] relies on entirely contradictory theories to avoid the inevitable result that her claims are time-barred: first she argues that Mr. Warner is equitably estopped from asserting the statute of limitations because he made threats during [her] employment to discourage her from bringing the present claim. Then she simultaneously argues that she blocked out her memory of these

11

events until 2020, in an effort to assert the delayed discovery rule."

After a hearing, on May 25, 2022 the trial court sustained the demurrer without leave to amend and ordered the case dismissed. In its oral ruling, the court found "in light of the factual nuances that have been pled in the amended complaint versus the one we first saw, . . . I come to the same conclusion that I did the first time that the statute of limitations bars the action and that the discovery rule is not applicable—the delayed discovery rule is not applicable here because I don't feel based on the factual pleadings that there are sufficient facts to invoke the rule." The court did not address equitable estoppel.[2]

On June 8, 2022 the trial court entered an order dismissing the action with prejudice. Walters timely appealed.[3]

---

[2] The trial court also found, in response to the Manson defendants' alternative argument, that the 10-year statute of limitations for damage claims based on adulthood sexual assault under former section 340.16, which was adopted pursuant to Assembly Bill No. 1619 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 939), effective January 1, 2019, did not apply retroactively.

[3] Walters's notice of appeal states she is appealing from a judgment of dismissal after an order sustaining a demurrer. Although no judgment was entered, "[t]he order of dismissal, signed by the trial court and entered by the court clerk, constitutes a judgment under Code of Civil Procedure section 581d." (*Moorer v. Noble L.A. Events, Inc.* (2019) 32 Cal.App.5th 736, 741, fn 3; see § 581d ["All dismissals ordered by the court shall be in the form of a written order signed by the court and filed in the action and those orders when so filed shall constitute judgments and be effective for all purposes . . . ."].)

12

**DISCUSSION**

A.   *Standard of Review*

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; accord, *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) When evaluating the complaint, "we assume the truth of the allegations." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209; accord, *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.) "'We accept as true even improbable alleged facts, and we do not concern ourselves with the plaintiff's ability to prove [the] factual allegations.'" (*Marina Pacific Hotel and Suites, LLC v. Fireman's Fund Ins. Co.* (2022) 81 Cal.App.5th 96, 104-105 (*Marina Pacific*); accord, *Hacker v. Homeward Residential, Inc.* (2018) 26 Cal.App.5th 270, 280 ["[i]n considering the merits of a demurrer, however, 'the facts alleged in the pleading are deemed to be true, however improbable they may be'"]; see *Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711["[w]e do not concern ourselves with whether the plaintiff will be able to prove the facts that he or she may allege in the complaint"].) However, "we are not required to accept the truth of the factual or legal conclusions pleaded in the complaint." (*Marina Pacific*, at p. 105; see *Mathews*, at p. 768 ["""We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law."""].)

"""[A] demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense."""" (*Silva v. Langford*

13

(2022) 79 Cal.App.5th 710, 716; accord, *Heshejin v. Rostami* (2020) 54 Cal.App.5th 984, 992.) If "'the complaint's allegations or judicially noticeable facts reveal the existence of an affirmative defense, the "plaintiff must 'plead around' the defense, by alleging specific facts that would avoid the apparent defense."'" (*Esparza v. County of Los Angeles* (2014) 224 Cal.App.4th 452, 459.) The application of an affirmative defense on demurrer based on facts alleged in the complaint, such as the statute of limitations, is subject to de novo review. (See *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.)

"Ordinarily, a general demurrer does not lie as to a portion of a cause of action, and if any part of a cause of action is properly pleaded, the demurrer will be overruled." (*Fire Ins. Exchange v. Superior Court* (2004) 116 Cal.App.4th 446, 452; accord, *PH II, Inc. v. Superior Court* (1995) 33 Cal.App.4th 1680, 1681-1683 [where each cause of action "allege[d] several distinct incidents of alleged malpractice," only one of which was barred by the statute of limitations, trial court erred in sustaining demurrer in part].)

B.     *The Delayed Discovery Rule*

"The limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues. [Citations.] Traditionally at common law, a 'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.' [Citation.] This is the 'last element' accrual rule: ordinarily, the statute of limitations runs from 'the occurrence of the last element essential to the cause of action.'" (*Aryeh v. Canon Business Solutions, Inc., supra*, 55 Cal.4th at p. 1191; accord, *Howard Jarvis Taxpayers*

14

*Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 815; *Garcia v. Rosenberg* (2019) 42 Cal.App.5th 1050, 1060.)

An exception to the general rule of accrual is the delayed discovery rule, "which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox v. Ethicon Endo–Surgery, Inc.* (2005) 35 Cal.4th 797, 807 (*Fox*); accord, *Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 191-192 (*Stella*).) Under the delayed discovery rule, "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110; accord, *Stella*, at p. 192; see *Derose v. Carswell* (1987) 196 Cal.App.3d 1011, 1017 (*Derose*) ["In personal injury cases, the wrongful act often causes immediate harm. But in some cases where injury was inflicted without perceptible trauma courts have held that the statute does not begin to run until the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, all of the facts which are essential to the cause of action."]; *G.D. Searle & Co. v. Superior Court* (1975) 49 Cal.App.3d 22, 25 ["An exception is presented when the pathological effect occurs without perceptible trauma and the victim is 'blamelessly ignorant' of the cause of injury; in that case, the statute of limitation does not begin to run until the person knows or, by the exercise of reasonable diligence, should have discovered the cause of injury."].)

"A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide

15

whether to file suit or sit on her rights.  So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly v. Eli Lilly & Co.*, *supra*, 44 Cal.3d at p. 1111; accord, *Stella, supra*, 8 Cal.App.5th at p. 192.)  "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action. . . . [P]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Fox, supra*, 35 Cal.4th at pp. 807-808; accord, *Jolly*, at p. 1114 ["the limitations period begins when the plaintiff suspects, or should suspect, that she has been wronged"].)

"In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his [or her] claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'" (*Fox, supra*, 35 Cal.4th at p. 808; accord, *Holman v. County of Butte* (2021) 68 Cal.App.5th 189, 197-198 (*Holman*) [survivor of child abuse adequately alleged delayed discovery of claims against welfare agency for breach of reporting duties where the survivor alleged he had suffered trauma-induced amnesia until memories of childhood abuse were triggered by parent's violent outburst nine years later].)

"When a plaintiff reasonably should have discovered facts for purposes of the accrual of a cause of action or application of the delayed discovery rule is generally a question of fact, properly decided as a matter of law only if the evidence (or, in the case of a

16

demurrer, the allegations in the complaint and facts properly subject to judicial notice) can support only one reasonable conclusion." (*People ex rel. Allstate Ins. Co. v. Discovery Radiology Physicians, P.C.* (2023) 94 Cal.App.5th 521, 552; accord, *Stella, supra*, 8 Cal.App.5th at p. 193.)

C.      *The Trial Court Erred in Sustaining the Demurrer Because Walters Adequately Alleged Delayed Discovery*

On appeal, Walters contends her complaint adequately alleged she was not aware of many of her claims due to trauma-induced memory suppression until 2020, and each cause of action was therefore timely under the delayed discovery rule. As to claims based on conduct that Walters did not suppress, Walters argues equitable estoppel applies to prevent the Manson defendants from asserting the statute of limitations. Walters does not dispute that without the benefit of the delayed discovery rule or equitable estoppel, her claims accrued in 2011 and are time-barred (insofar as they are governed by the two-year statute of limitations in section 335.1 for assault, battery, or other personal injury claims).[4] Further, the Manson defendants

_____

[4]      Walters contends, the Manson defendants concede, and we agree her third cause of action for sexual assault under section 340.16 is not time-barred based on recent amendments made by Assembly Bill No. 2777 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 442), effective January 1, 2023, that extended the 10-year limitations period retroactively to revive lapsed claims. (See *Jane Doe #21 (S.H.) v. CFR Enterprises, Inc.* (2023) 93 Cal.App.5th 1199, 1209-1210 [finding Assembly Bill No. 2777's amendment to section 340.16 revived lapsed claims for sexual assault based on conduct occurring after January 1, 2009].)

17

demurred solely on the basis of the statute of limitations and do not dispute that the allegations of the complaint are otherwise sufficient to state a claim.  Accordingly, the narrow issue before us is whether Walters adequately alleged a basis for applying the delayed discovery rule.  We conclude she did.

As discussed, to allege delayed discovery, Walters had the burden to plead facts showing the time and manner of the discovery and the inability to have discovered the wrongdoing and injury despite reasonable diligence.  (*Fox, supra*, 35 Cal.4th at p. 808; *Holman, supra*, 68 Cal.App.5th at pp. 197-198.)  As to the first element, the complaint alleged over 20 occurrences that Walters recalled "[i]n the fall of 2020 or later, through therapy" or "through the support group."  The complaint described the support group Walters joined in October 2020 and recounted the stories shared by the other abused women that "began to unlock new memories [Walters] repressed long ago as a result of her psychological trauma by being manipulated and threatened by Warner during and after her employment."  The complaint also described how Walters began therapy in November 2020 and was diagnosed the following month with complex posttraumatic stress disorder, major depressive disorder, and generalized anxiety disorder.  Further, the combination of the support group and

---

Because we hold that delayed discovery was adequately alleged and reverse on that basis, we do not reach Walters's contention that section 340.16 applies to and revives all her causes of action against both Warner and Manson Records.  We also do not reach Walters's contention the complaint adequately alleged conduct by the Manson defendants that equitably estopped them from asserting that the two-year statute of limitations under section 335.1 barred Walters's claims.

therapy helped her "understand the extent and wrongfulness of, and recall all of the abuse by Warner." The Manson defendants do not argue these allegations were inadequate as to time and manner.

As to the second element, the complaint alleged the psychological mechanisms by which Walters suppressed the memories of Warner's conduct and failed to perceive any harm from his conduct. As a victim of a previous sexual assault, Walters alleged she unconsciously used defense mechanisms to survive Warner's abuse, and as a result of "manipulation, abuse, violence, praise, coercion, [and] power and influence as a celebrity implemented by Warner," she repressed her memories of the abuse. Until she received diagnosis and treatment, Walters was unable to remember the repressed events, and "once she did recall them, she was unable to immediately identify these events as abuse." These allegations of suppressed memories and psychological blocking are sufficient to withstand a demurrer. (See *Holman, supra*, 68 Cal.App.5th at pp. 192-193 [allegations victim "'was suffering from trauma induced amnesia, as diagnosed by his mental health provider,'" and the "'trauma induced amnesia prevented him from remembering the consistent and repeated abuse that he suffered at the hands of his father and mother years earlier'" were sufficient to invoke delayed discovery]; cf. *Derose, supra*, 196 Cal.App.3d at p. 1018 ["If [plaintiff] could and did allege that she repressed her memories of the sexual assaults until one year before filing her complaint, she might be able to invoke the delayed discovery rule."].)[5]

---

[5]     In *Derose, supra*, 196 Cal.App.3d at page 1018, the court reasoned allegations of repressed memories of childhood sexual

19

The Manson defendants make three related arguments why Walters was on inquiry notice of her claims, precluding application of the delayed discovery rule. First, they argue Walters is bound by the allegations of her first amended complaint, which described Warner's alleged misconduct but did not allege her memory of any particular act was suppressed.

Contrary to the Manson defendants' contention, the first amended complaint (like the operative complaint) alleged Walters "developed psychological blocking mechanisms . . . such that she blocked at least some of the events from her conscious

---

assault could support application of the delayed discovery rule because the plaintiff "could not logically be charged with awareness of the harm if she had not been aware of the assaults. In fact, there are allegations in the complaint that might be read to suggest that this was the case." But the court affirmed an order sustaining the defendant's demurrer because the plaintiff took the position in the trial court and on appeal that she recalled the sexual assaults but repressed the emotional harm she suffered. (*Id*. at pp. 1018-1019.) The court concluded the delayed discovery rule did not apply because as a matter of law an assault causes harm when it takes place, and thus the cause of action for sexual assault was complete at the time of the assault. (*Id*. at p. 1018.) The Manson defendants argue *Derose* supports their position because Walters was aware of "at least some of these assaults" at the time they occurred. This is true as to the pre-employment sexual assault, as to which Walters's claim for sexual assault would have been barred but for the extended limitations period under section 340.16. But even if the pre-employment sexual assault was time-barred, that does not mean Walters would have been barred from bringing a claim for a later sexual assault (or sexual harassment) that is not time barred but included within a single cause of action. (*PH II, Inc. v. Superior Court, supra*, 33 Cal.App.4th at pp. 1682-1683.)

20

memory." The Manson defendants do not identify any admission in the first amended complaint that was omitted from the second amended complaint or a prior allegation that was directly contradicted by a new allegation. (See *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425 ["Under the sham pleading doctrine, plaintiffs are precluded from amending complaints to omit harmful allegations, without explanation, from previous complaints to avoid attacks raised in demurrers or motions for summary judgment. [Citation.] 'If a party files an amended complaint and attempts to avoid the defects of the original complaint by either omitting facts which made the previous complaint defective or by adding facts inconsistent with those of previous pleadings, the court may take judicial notice of prior pleadings and may disregard any inconsistent allegations.'"].)

Second, the Manson defendants argue Walters alleged potentially actionable sexual abuse and harassment by Manson that she had not suppressed, which would have placed her on inquiry notice of her injury and claims.[6] They point to Walters's allegations that in May 2010 when she first met Warner and during the video shoot for Manson Records prior to Warner hiring her, Warner and an actor sexually assaulted her. And after she

---

[6] The Manson defendants do not argue that if Walters could have brought viable claims based on the non-suppressed conduct, this precluded her from splitting her causes of action and later filing a lawsuit based on the suppressed conduct. And it may well be that at trial Walters will not be able to recover damages based on the 2010 and 2011 alleged conduct that Walters did not suppress unless equitable estoppel applies. But because we conclude Walters alleged conduct that is not time-barred in support of each cause of action, that question is not before us on appeal from the trial court's order sustaining the demurrer.

21

was hired, she was subjected to sexual harassment, emotional abuse, and manipulation.  Then, after she was terminated in July 2011, she still returned to work because she was "terrified about the repercussions she would face if she refused."  The Manson defendants point out that these are the same allegations that Walters describes as being so extreme that the Manson defendants should be equitably estopped from relying on the statute of limitations.  We agree the alleged conduct Walters did not suppress was egregious, but it is a factual question not appropriate at the demurrer stage whether these allegations should have placed Walters on inquiry notice of the claims based on her suppressed memories.

Although Walters recalled sexual abuse when she met Warner and at the video shoot, this was prior to her employment by Warner and Manson Records, and it would not necessarily have placed Walters on notice of the sexual abuse committed after she was hired.  And most of the alleged conduct Walters did not suppress was directed at other people, including Warner subjecting employees to physically violent rages, verbal abuse, brandishing weapons, and bragging about stalking, killing, and ruining the lives of people who were disobedient.  With respect to conduct directed at Walters that she did not suppress, this included Warner keeping compromising photographs of Walters, boasting and joking about rape despite knowing Walters had suffered a sexual assault, and encouraging Walters to "'please'" his friends (without elaboration), warning that artists and celebrities would blacklist her if she did not.

The allegations Walters recalled differ from those she suppressed, in that they involved sexual and physical abuse of her.  These include Warner throwing her against a wall, feeding

her cocaine while forcing her to stand on a chair for 12 hours, and his involvement in multiple sexual assaults by three men in the entertainment industry.  As discussed, Walters alleged Warner told an actor he could "'have her,'" resulting in the actor forcing her to urinate in front of him, licking her vagina, and kissing her on the mouth.  Warner also allegedly forced her to repeatedly drive a director home, who exposed himself to her, requested oral sex, and told Walters he masturbated to thoughts of her.  And Walters alleged Warner forced Walters to flirt with a musician, who then bit her nipple with Warners's encouragement as Warner took photographs.

Finally, the Manson defendants argue, "It simply beggars credulity that [Walters] could remember none of the extensive litany of alleged outrageous behavior.  It is too memorable, and happened too many times, for her to have remembered none of it."  This is a factual issue that cannot be resolved on a demurrer.  At the pleading stage "'we do not concern ourselves with the plaintiff's ability to prove [the] factual allegations.'" (*Marina Pacific, supra*, 81 Cal.App.5th at pp. 104-105; see *Hacker v. Homeward Residential, Inc., supra*, 26 Cal.App.5th at p. 280 ["[i]n considering the merits of a demurrer, however, 'the facts alleged in the pleading are deemed to be true, however improbable they may be'"].)

23

## DISPOSITION

The order of dismissal is reversed.  The matter is remanded to the trial court with directions to vacate the order sustaining the demurrer to the second amended complaint without leave to amend and to enter a new order overruling the demurrer.  Walters is to recover her costs on appeal.

FEUER, J.

We concur:


SEGAL, Acting P. J.


MARTINEZ, J.

24